Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 1981 | **DATE** | 4/22/2004 |
| **CASE TITLE** | CFM Corporation vs. Dimplex North America Ltd. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Enter Memorandum Opinion and Order Pertaining to Claims Contributions.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 90 |
| | Mail AO 450 form. | | docketing deputy initials 15 | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | | |
| | WAP | courtroom deputy's initials | 2004 APR 23 AM 8:15 | date mailed notice |
| | | | Date/time received in central Clerk's Office | mailing deputy initials |

CFM CORPORATION,

Plaintiff/Counter-Defendant,

v.

DIMPLEX NORTH AMERICA LTD.,

Defendant/Counter-Plaintiff.

Case No. 02 C 1981

Hon. Harry D. Leinenweber

APR 2 3 2004

## MEMORANDUM OPINION AND ORDER
## PERTAINING TO CLAIMS CONSTRUCTION

Plaintiff CFM Corporation (hereinafter, "CFM") brings this action against Defendant Dimplex North America Ltd. (hereinafter, "Dimplex") seeking a declaratory judgment that Dimplex's U.S. Patent No. 5,642,580 (the "'580 Patent") is invalid and unenforceable. CFM also seeks a declaration that it is not infringing on Dimplex's '580 Patent. Dimplex counterclaims that CFM is infringing on the '580 Patent. Presently before the Court are the parties' *Markman* briefs for claims construction as to the meaning and scope of several disputed claims of the '580 Patent.

### I. BACKGROUND

The '580 patent pertains to an electric fireplace "having an improved flame simulating apparatus." The specification and claims provide for a light source, a flame effect element, a flicker element, a fuel bed, and a partially reflecting screen that displays an image of the fuel bed, simulated flames, and simulated



gasses. In the preferred embodiment, the flame effect element is illustrated and described as "a single thin sheet of a light-weight, substantially opaque" material that contains "a plurality of slits" to permit light to pass through" as the material "billows under the influence of air currents" from an air blower. The flicker element is described as an elongated rod "having a plurality of reflective strips extending radially outwardly" that reflect light so as to simulate the upward movement of gasses and flames.

## II. **LEGAL STANDARDS**

### A. **Claims Construction**

Claim construction is a matter of law reserved for the Court. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996). "[O]nly those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy." *Vivid Techs., Inc. v. American Sci. & Eng'g, Inc.*, 200 F.3d 795, 804 (Fed. Cir. 1999). Claims are "construed without regard to the accused product," *Jurgens v. McKasy*, 927 F.2d 1552, 1560 (Fed. Cir. 1991), and are interpreted through the lens of a "person of ordinary skill in the field of the invention," *Multiform Dessicants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1477 (Fed. Cir. 1998). To ascertain the meaning of a patent claim, the Court looks first to intrinsic evidence, which consists of the language of the claim, the specification, and, if in evidence, the prosecution

history. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). "[W]ords in a claim are generally given their ordinary and customary meaning." *Id.* However, "a patentee may choose to be his own lexicographer and use terms in a manner other than their ordinary meaning, as long as the special definition of the term is clearly stated in the patent specification or file history." *Id.* Thus, because "[t]he specification acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication," it "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Id.* If in evidence, the prosecution history, which consists of "the complete record of all the proceedings before the Patent and Trademark Office, including any express representations made by the applicant regarding the scope of the claims," *id.*, must also be examined. "The prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution." *Southwall Tech., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995); *cf. Ekchian v. Home Depot, Inc.*, 104 F.3d 1299, 1304 (Fed. Cir. 1997).

The guidance offered by intrinsic evidence is usually sufficient to determine conclusively the meaning and scope of the claim at issue. *Vitronics*, 90 F.3d at 1583. Accordingly, resort to extrinsic evidence is only appropriate where there is "still

some genuine ambiguity in the claims, after consideration of all available intrinsic evidence." *Id.* at 1584. "Extrinsic evidence consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries and learned treatises." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995). A court is always free to consult extrinsic evidence, however, if it will assist the court's understanding of the technology underlying the patent. *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1309 (Fed. Cir. 1999).

### III. DISCUSSION

As a preliminary matter, the parties' opening *Markman* briefs include discussion of certain phrases from claims that parties anticipated may be challenged by their opponent. As it turns out, some of the claim phrases raised in the opening briefs were not contested in the responsive *Markman* briefs, and thus the Court will address only those phrases included in the proposed claim construction charts in the parties' responsive *Marmkan* briefs.

**Claim 1: "A flame effect having means for transmitting light from said light source to produce a moving flame effect"**

The parties (and the Court) agree that this portion of Claim 1 is written in a means-plus-function format, and, correspondingly, must be interpreted under 35 U.S.C. § 112 par 6, and the corresponding case law. *See, Cardiac Pacemakers v. St. Jude Medical*, 296 F.3d 1106 (Fed. Cir. 2002). Construction of a means-

plus-function limitation involves two steps. *See id.* at 1113. First, the Court must determine the claimed function, but must include only those limitations contained in the claim language, rather than the specification. *See id.* The Court utilizes ordinary claim construction principles to interpret the limitation language. *See id.* Second, after identifying the function, the Court must determine what structure, if any, disclosed in the specification corresponds to the claimed function. *See id.*

CFM contends that the claimed function here is "transmitting light through a moving flame effect element." Specifically, CFM argues that this function includes "both (1) permitting a passage of light through the flame effect and (2) permitting movement of the flame effect element." (CFM depends heavily on the purported prior art of the Butterfield 4,965,707 patent in its interpretation of the claimed function here; however, as shown below, the instrinsic evidence found within the '580 patent is sufficient to determine the function and the Court need not turn to the '707 patent.) CFM next contends that the corresponding structure to effect this function is a single sheet of light-weight, substantially opaque, material than can "ripple, billow, or otherwise move." Thus, according to CFM, the proper construction for this portion of Claim 1 should read:

> A device used in simulating flames that is made of flexible opaque material and is movable, with light transmitting areas such that light passing therethrough is seen to

change in response to movement of opaque material.

Dimplex, of course, takes issue with CFM's proposed construction. The crux of the parties' disagreement appears to center on whether the means-plus-function limitation in Claim 1 requires that the flame effect element be a moving structure. CFM relies heavily on the clause "to produce a moving flame effect" to show that the function necessarily includes production of a moving flame effect, which in turn requires the movement of the corresponding structure, the flame effect element. Dimplex responds by claiming that CFM erroneously premises its construction on the flame effect element as being the means for transmitting light, rather than simply "having means for transmitting light," as the claim plainly reads. Dimplex contends that the "means for transmitting light are openings, holes, gaps or slits" (or other equivalents thereof) in the flame effect element that permit passage of light through the flame effect element. Dimplex next argues that CFM mischaracterizes the claimed function, which is the transmission of light rather than the creation of a moving flame effect. (Dimplex also raises the issue of claim differentiation to show that Claim 1 does not necessarily impart motion on the flame effect element; the Court, however, does not need to address this issue of claim differentiation to interpret the applicable language in Claim 1.)

Ultimately, Dimplex has the stronger argument here. In the normal course of interpretation of a means-plus-function clause, the phrase "means for" is a signal for the clause that recites the function. *See Lockheed Martin Corp. v. Space System/Loral, Inc.*, 324 F.3d 1308, 1319 (Fed. Cir. 2003). Thus, a court should look to the "means for" phrase to determine the function. *See id.* Clauses that follow the "means for" clause that contain nothing more than a recitation of the ultimate desired result of the function should not be considered part of the function. *See id.* Here, the "means for" clause indicates that the claimed function is "transmitting light from said light source." The subsequent clause "to produce a moving flame effect" merely states the ultimate desired result of the limitation in the claim (*i.e.*, "a moving flame effect") and therefore "adds nothing to the substance of the claim." *Texas Instruments Inc. v. United States Int'l Trade Comm'n*, 988 F.2d 1165, 1172 (Fed. Cir. 1993). Accordingly, the function at issue here should not contain the production of a moving flame effect, as this is an ultimate result of a series of operations in the device, and is not the proper subject of the more-immediate function of transmitting light that is specified in Claim 1. (In any event, even if the function were to include the phrase "to produce a moving flame effect," the intrinsic evidence here indicates that a moving flame effect element is not the only mechanism for producing a moving flame effect, but rather the flicker element also "facilitates the appearance of upwardly moving gasses *and colored*

*flames*." Col. 5, ll. 34-35 (emphasis added).) Although the specification must not limit the claim, it can inform or confirm construction of a claim in controversy. *See, e.g., Texas Digital Systems, Inc. v. Telegenix*, 308 F.3d 1193, 1204-05 (Fed. Cir. 2002).

Turning now to the corresponding structure necessary for carrying out the function of "transmitting light from said light source," it is clear that the flame effect element is linked in the specification with this function. CFM argues strongly that the specification necessarily indicates that the flame effect element structure must have a moving component to produce the moving flame effect. However, as noted above, the function here is merely the transmission of light, and not the production of the moving flame effect. Moreover, neither the plain language of the limitation nor the specification indicate that the flame effect element necessarily must move to create the moving flame effect. Indeed, the specifications show that the flicker element is related not only to the appearance of upwardly moving gasses but also the movement of colored flames. *See* Col 5, ll. 19-20, 32-44.

The parties also submitted additional briefing on the issue of whether the subsequent prosecution history of a subsequent related patent (Patent No. 6,047,489) informs the claim construction of the phrase at issue here. Assuming *arguendo* that such subsequent prosecution history is pertinent extrinsic evidence worthy of consideration, the Court does not find that it adds sufficient

clarification to the intrinsic evidence here to alter the Court's claim construction. Specifically, both parties point to conflicting language in the prosecution history of the subsequent patent that purportedly supports their interpretation of language at issue in Claim 1 of the '580 patent. Because the intrinsic evidence of the '580 patent is sufficient to construe the phrase at issue here, and because of the conflicting nature of the additional proffered extrinsic evidence, the Court finds that consideration of the '489 patent does not add additional interpretive value.

Taken together, the Court finds the following claim construction for the phrase "A flame effect having means for transmitting light from said light source to produce a moving flame effect":

> A stationary or mobile component made of light-weight material that contains openings for transmitting light to produce an impression of moving flames.

### Claims 1 and 30: "flicker element having at least one reflective surface"

CFM contends that this portion of Claims 1 and 30 fails to describe what the flicker element is structurally. CFM argues that the claims require only that the flicker element have one reflective surface. Dimplex, in turn, argues that the plain and ordinary meaning of "flicker" is "a quick wavering motion." According to Dimplex, "having at least one reflective surface" requires that the flicker element have at least one surface that bends or throws back light. Dimplex points to the specification to

show that flicker element imparts motion on the reflected light from the light source.

The principal disagreement between the parties here centers on how to treat the word "flicker" in relationship to the other claim language. The general rule, of course, is that the Court should first look to plain and ordinary meaning of "flicker" from the vantage point of one skilled in the art. Here, neither party argues that the ordinary dictionary definition of "flicker" differs from the one employed by those skilled in the art. The parties essentially agree that the noun and verb form of "flicker" connotes wavering of light. Next, the Court may look to the intrinsic evidence (typically the specification) to ascertain consistency between the ordinary meaning of "flicker" and its use by the patentee. *See Texas Digital Systems, Inc.*, 308 F.3d at 1204-05. Here, the ordinary and plain meaning of "flicker" – whether in noun or verb form – unmistakably imparts wavering light, and this is entirely consistent with – and supported by – the specification's description of the flicker element. It is therefore appropriate to include this definition of "flicker" into the claim construction as follows:

> a component part having at least one surface that reflects light in a wavering motion.

### Claim 1: "a screen having a partially reflecting surface and a diffusing surface"

CFM depends heavily on the prior art '707 patent to support its claim interpretation here. CFM argues that the '707 patent's

description of the screen at issue there dictates that the claim language here should be construed, in part, as a "panel with two surfaces . . . that acts as a mirror." CFM also points to the specification language indicating that the screen is "positioned immediately behind the fuel bed 26 so that the fuel bed 26 will be reflected in the reflecting surface 44 to give the illusion of depth" to support its view that the "entire point of this mirrored surface is to provide the clear image of simulated flames from between the fuel bed and its reflection on the screen." Dimplex, in turn, contends that the phrase at issue is not ambiguous. Relying on dictionary definitions, Dimplex notes that a "partially reflecting surface" is a surface that "partially bends light." A "diffusing surface" is a surface that "disperses and softens light."

The plain terms in this claim are relatively straightforward and must be afforded their everyday meaning. CFM's argument not only seeks to introduce improperly the specifications from another patent but also attempts to limit the claim to the specification terms. The proper claim construction is:

> a screen having a surface that partially bends light or gives back an image and also having a surface that disperses and softens light.

### Claims 1 and 30: "an image . . . which resembles moving flames" and "an image which resembles moving gasses"

CFM contends that the reference in Claim 1 to an "image of moving flames" addresses an image that is necessarily different

from simulation of "moving gasses from a fire" specified in Claim 30. CFM bases its proposed construction on the argument that the image of moving flames is "something defined by vertically oriented slits cut into the moving flame effect element," whereas the simulation of upwardly moving gasses is created by use of the flicker element. Dimplex finds little ambiguity in this claim language and simply proposes that it be construed precisely as the language states.

It is difficult to see where controversy lies in the construction of these claims. Dimplex appears to concede that the images are indeed distinct. The point of difference between the parties appears to be CFM's contention that the image of moving gasses must appear above the image of moving flames. However, nothing in the claim itself specifies this and there is no other controlling intrinsic evidence that compels this result. Accordingly, the Court adopts the following construction for "an image . . . which resembles moving flames," and "an image which resembles moving gasses from a fire, " respectively:

> a representation that gives the appearance of moving flames;
>
> a representation that gives the appearance of moving gasses from a fire.

### Claims 1 and 30: "the image of moving flames [or moving gasses] appears to emanate between the simulated fuel bed and its image on the screen"

CFM notes that "this claim terminology is straightforward and may not actually be in any serious controversy." Indeed, there is

no controversy as to the actual terms, but rather CFM expresses concern that Dimplex may argue that such images "can be met when the unit is turned off." Dimplex does not make this argument. Thus, there is no controversy in the construction of this claim and therefore the Court need not create any.

### IV. CONCLUSION

For the reasons stated here, the above claim construction is hereby entered.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Date: April 22, 2004